**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | CASE NO. 1:15 CR 263 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Kenneth A. Jackson, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

### Introduction

This matter is before the Court upon defendant's Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 307). This case arises from defendant's conviction, along with three other defendants, relating to an investment fraud scheme revolving around the development of a hypodermic syringe destruction device called the "Sharps Terminator." For the following reasons, the motion is DENIED.

### Facts

On direct appeal to the United States Court of Appeals for the Sixth Circuit by the four defendants charged in this offense, the following background facts were stated:

1

In August 1992, defendant Kenneth Jackson was convicted in Ohio state court of multiple counts of unlicensed sales of securities and sales of unregistered securities, passing bad checks, perjury, theft and aggravated theft. The convictions stemmed from Jackson's operation of what the government has characterized as a $13 million Ponzi scheme involving sales of securities in "Vision Television Network." As a consequence, Jackson was incarcerated from 1992 to 1999. He was also prohibited, by injunction of the Securities and Exchange Commission ("SEC"), from holding any corporate officer or director position in a publicly traded company. Jackson was also subject to a disgorgement order requiring him to pay $1.8 million to the SEC.

Despite these setbacks, in 2002, Jackson had become director of research and development for Event Future (a/k/a E-Med), a company he and co-defendant Daryl Dane Donohue established to design and manufacture a hypodermic needle destruction device called "Needlezap." The Needlezap disposes of used needles by crushing them. It is a Class III medical device requiring Food & Drug Administration ("FDA") approval before marketing. Donohue was employed by E-Med to address the FDA's regulatory compliance requirements. The Needlezap was granted FDA approval in 2003 and was patented in 2006.

In 2007, Jackson left E-Med and he and co-defendant William Schureck created Medical Safety Solutions ("MSS") to develop and market an improved version of the Needlezap called the "Sharps Terminator." The Sharps Terminator was designed to dispose of used needles by incinerating them. Again, FDA premarket approval was required. Donohue was hired by MSS as a regulatory compliance consultant, but Jackson, director of research and development, was responsible for obtaining FDA approval of the Sharps Terminator. Schureck was Chief Executive Officer of MSS.

To raise funds for development of the Sharps Terminator by selling securities, MSS prepared two prospectuses, "Prospectus A" (2007) and "Prospectus B" (2009). Prospectus A disclosed an Assets Purchase Agreement under which MSS agreed to pay Jackson and Schur Partnership (a venture established by Schureck) $3 million for transfer of ownership of the Sharps Terminator, along with its patent and intellectual property rights. What the prospectuses did not include, relevantly, was any mention of MSS co-founder Jackson's prior convictions for theft and securities fraud offenses. Nor did the prospectuses disclose that the conduct for which Jackson was convicted also precipitated action by the SEC that resulted in a $1.8 million judgment against him, as well as an injunction prohibiting him from holding any officer or director position in a publicly traded company.

In the summer of 2007, MSS began displaying its plans for the Sharps Terminator and soliciting investments at medical trade shows. MSS raised $5 million from investors in response to Prospectus A. Among the first such investors, co-defendant Dennis DeCiancio invested $275,000 and became a promoter of the Sharps Terminator at trade shows. Of the $5 million received, $3 million was to be used to pay for the intellectual

2

property rights in the Sharps Terminator and to repay prior investors in the Needlezap, and $2 million was to be used for further research and development of the Sharps Terminator.

In July 2007, MSS also purportedly commenced efforts to obtain FDA premarket approval and told inquiring investors for years that progress was slow, but approval was imminent. In fact, Jackson testified, it was not until October 2012 that he first filed the application for premarket approval. The FDA responded to the application a month later with the first of several deficiency letters, which MSS was attempting to address when, in March 2013, its efforts were undercut by execution of a search warrant and seizure of MSS files and records. In the meantime, the FBI had begun investigating MSS's operations.

The investigation ripened into an 80-page, 31-count indictment in the Northern District of Ohio in July 2015, charging all four of the above-named defendants—Jackson, Donohue, Schureck and DeCiancio—with numerous offenses allegedly committed between November 2007 and May 2013, including conspiracy, mail fraud, wire fraud, securities fraud, and money laundering. The charges were premised on allegations that defendants, in soliciting investments for development and marketing of the Sharps Terminator device: falsely represented the status of FDA premarket approval proceedings, the market-readiness of the Sharps Terminator, and the use to which invested funds would be applied; and failed to disclose material information to prospective investors about Jackson's prior convictions.

A joint jury trial was conducted in April and May 2016 and culminated in verdicts on May 6, 2016, finding all four defendants guilty of almost all charged offenses. All four defendants were sentenced on October 25, 2016, to various prison terms: Jackson to 188 months, Schureck to 108 months, DeCiancio to 70 months, and Donohue to 46 months. The judgments of sentence were entered on November 1, 2016, and each defendant timely filed notice of appeal. The judgments were followed by a restitution order on January 5, 2017, ordering all four defendants, jointly and severally, to pay restitution in the amount of $9,825,917.41. Amended judgments, incorporating all terms and conditions of the sentences, were entered on February 6, 2017. None of the defendants filed notice of appeal from his amended judgment.

*United States v. Donohue, et al.,* 726 Fed.Appx.333 (6th Cir. 2018). The Sixth Circuit affirmed all four judgments.

This matter is now before the Court upon defendant Jackson's Motion to Vacate Under 28 U.S.C. § 2255.

**Standard of Review**

3

28 U.S.C. § 2255 provides a prisoner in federal custody a remedy to collaterally attack his sentence on the ground that it was imposed in violation of the Constitution or laws of the United States. A prisoner may move to vacate, set aside or correct his sentence upon the basis that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. To warrant relief under the statute because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citation omitted); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir.2005).

**Discussion**

Defendant asserts ten grounds for relief, nine of which involve allegations of ineffective assistance of counsel and denial of due process. The remaining claim alleges prosecutorial misconduct.

To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Counsel is presumed to have provided effective assistance, and a petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003). In attempting to establish that an attorney's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687-88. An error by counsel, "even if professionally unreasonable, does not warrant setting aside the judgment of a

4

criminal proceeding if the error had no effect on the judgment." *Id*. at 691. Deficiencies in counsel's performance must instead "be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692. It is not enough for the defendant to show "that the errors had some conceivable effect on the outcome of the proceeding" as virtually "every act or omission of counsel would meet this test." *Id*. at 693. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Ground One asserts that counsel assured defendant that the Court's admission of his prior convictions was well-preserved for appeal, but the Sixth Circuit determined that the issue was not preserved and, consequently, reviewed it under a more difficult standard. Defendant points out that his counsel filed a motion in limine to exclude the prior acts evidence and "objected at every turn" to admission of the evidence. But, the Court allowed the government to use the evidence as "direct proof" of the current charge. As a result, the government "bludgeoned" defendant over 80 times with the prior convictions which was extremely prejudicial and poisoned the jury. However, this Court's ruling allowing the prior convictions as "direct proof" of the charged scheme was upheld on appeal when challenged by a co-defendant. As such, the case law discussed in the appellate decision shows that trial counsel did not perform in an objectively unreasonable manner by not further objecting to the evidence. Moreover, because defendant cannot establish that there is a reasonable probability that the result would have been different had counsel further challenged admission under the direct proof theory, he cannot demonstrate prejudice.

Ground Two asserts that defendant was denied due process when the Court permitted testimony regarding a 1992 SEC judgment ordering defendant to disgorge $1.8 million. Defendant maintains that the order "had expired" and was "too old to be collectible," and that his attorney was ineffective in failing to preserve the issue for appeal. But, as the government points out, there is no evidence that the order had expired. As such, there was no denial of due process or ineffective assistance of counsel.

Ground Three asserts that defendant's counsel was ineffective for failing to request an instruction, or object to the Court's failure to give an instruction, on securities law as it relates to an affirmative duty to disclose. However, the Sixth Circuit concluded that the materiality of withheld information in the securities fraud context "does not depend strictly on the existence of a duty to disclose that has been codified by statute or prescribed by regulation." Thus, defendant cannot show deficient performance or prejudice on this basis.

Ground Four asserts that defendant's counsel proposed a flawed jury instruction on the use of the prior convictions as evidenced by the fact that the Sixth Circuit referred to the "rough edges" of the instruction. But, the Sixth Circuit recognized that the instruction was consistent with the Sixth Circuit Pattern Instructions. It also determined that the instruction yielded the intended meaning that the evidence of the prior convictions was introduced in relation to the government's allegation that defendant had made material misrepresentations and omissions regarding the existence of those convictions, and the evidence was not to be used for any other purpose. Thus, defendant does not demonstrate deficient performance as to the instruction.

Ground Five asserts that counsel was deficient for failing to call any expert witnesses as to the FDA approval process, SEC regulations, or the patent process which meant that the jury

did not understand these issues. As pointed out by the government, however, defendant fails to identify any witnesses who would have testified in a manner favorable to him. Also, counsel's decisions in this regard do not amount to ineffective assistance where the government presented testimony by an FDA representative who explained the process and defendant has not demonstrated how a credible witness on his behalf would have been different. Nor is there support that an expert on SEC regulations would have affected the trial where the Sixth Circuit concluded that the duty to disclose the prior convictions did not arise from SEC regulations. Finally, the patent process was not relevant to the patent-related allegations.

Ground Six asserts that counsel was deficient by not preserving for appeal a challenge to the amount of restitution and loss calculation. Even if defendant's counsel was deficient for not preserving this issue, the Sixth Circuit discussion on the merits raised by co-defendant Donohue shows there was no prejudice.

Ground Seven asserts that the trial court ordered forfeiture against him and his counsel did not object or preserve the issue for appeal. However, as noted by the government, this Court recognized at sentencing that the forfeiture provision had been dismissed. (Doc. 278 at 20)

Ground Eight asserts that counsel failed to present evidence to show the corporate liability of MSS Corporation, including the 2013 settlement agreement reached between defendants, MSS, and the investors. Defendant maintains that the agreement should have been taken into consideration in the loss calculation or restitution amount. The government responds that under Sixth Circuit precedent, the issue does not affect restitution, and that this Court made other findings at sentencing which show that this issue would not have changed the outcome at sentencing even if raised by counsel. Defendant filed a reply to the government's response but

did not demonstrate that there is a reasonable probability that, but for his counsel's failure to bring up the issue of the settlement agreement, the amount of his restitution would have been lower.

In Ground Nine, defendant argues that he was denied due process because the securities statutes at issue are unconstitutionally vague. But, defendant did not raise this issue on direct review and, therefore, it is procedurally barred. Nor has defendant shown cause for the default. Even if he could raise the issue here, the government shows that defendant has failed to establish that the statutes are unconstitutionally vague.

Ground Ten alleges prosecutorial misconduct based on certain "lies" told at the trial. Defendant raised a prosecutorial misconduct claim on direct review, but it challenged two other comments made during the opening statement. The appellate court rejected the argument which cannot be re-litigated here. To the extent that defendant raises new bases for his prosecutorial misconduct claim, the issue is barred for failure to raise it on direct review.

For these reasons, none of defendant's asserted grounds warrant relief under § 2255.

**Conclusion**

For the foregoing reasons, defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is denied. Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Dated: 8//8/19          Chief Judge